UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVEN C. LEAF, | ) | 2:08-cv-01554-HDM-RAM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| T. FELKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff is a state prisoner proceeding pro se. He seeks relief pursuant to 42 U.S.C. § 1983. Defendant Felker filed the present motion to dismiss (#24) on August 13, 2009; defendants Cimino, Sader, Foulk, and Casaurang joined in the motion on December 3, 2009 (#36). Plaintiff opposed the motion (#25), Felker filed a reply (#26), and plaintiff filed a surreply (#27). On October 14, 2009, the court ordered supplemental briefing. Felker filed his supplemental brief on November 16, 2009 (#35). Plaintiff

1

filed his response on December 2, 2009 (#37). Defendants' motion seeks to dismiss plaintiff's complaint for failure to exhaust administrative remedies.

Plaintiff claims that on October 3, 2007, he was transferred into facility "C" at High Desert State Prison ("HDSP"). Before that, he had been housed in facility "B" at HDSP, a lower custody yard. Plaintiff claims he voiced concerns to prison officials about the transfer because of a "well documented threat against all white inmates housed on facility 'B' whom then are later rehoused on facilities 'C' or 'D' that have not attacked anyone on facility 'B' before being rehoused." (Compl. 5). He claims that, despite his concerns, he was transferred into facility "C" and on January 11, 2008, was attacked by another inmate and "nearly stabbed to death." (*Id.*)

Plaintiff underwent an emergency splenectomy at Renown Medical Center in Reno, Nevada, as a result of his wounds sustained in the attack. (*See* Def. Supp. Ex. L). He spent eight days in the hospital before being transferred to the infirmary at High Desert State Prison ("HDSP"). (Compl. 42). Plaintiff was released from the infirmary and into administrative segregation on January 28, 2008. (*Id.* at 42, 50).

Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is a prerequisite to all suits about prison life. *Porter v. Nussle*, 534 U.S. 516,

2

1  524, 532 (2002).  Administrative remedies must be exhausted prior
2  to filing suit; exhaustion during the pendency of the suit is
3  insufficient.  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir.
4  2002) (per curiam); *Vaden v. Summerhill*, 449 F.3d 1047, 1150-51 (9th
5  Cir. 2006).  There must be "proper exhaustion" of available
6  administrative remedies, meaning the inmate must "us[e] all steps
7  the agency holds out. . . ."  *Woodford v. Ngo*, 548 U.S. 81, 90
8  (2006).  A prisoner does not satisfy the exhaustion requirement by
9  filing an untimely appeal.  *Id.* at 83-84.

10      Failure to exhaust is treated as a matter in abatement and is
11 subject to an unenumerated Rule 12(b) motion.  *Wyatt v. Terhune*,
12 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding a motion to
13 dismiss on such grounds, "the court may look beyond the pleadings
14 and decide disputed issues of fact."  *Id.* at 1120.  If the court
15 finds the prisoner has not exhausted his administrative remedies,
16 the proper remedy is dismissal without prejudice.  *Id.*

17     Failure to exhaust is an affirmative defense; defendants thus
18 bear the burden of raising and proving the absence of exhaustion.
19 *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (quoting *Wyatt*,
20 315 F.3d at 1119).  Further, before the court can find a failure to
21 exhaust, the defendants must prove that "*some* relief remained
22 available" that the prisoner failed to pursue, "whether at
23 unexhausted levels of the grievance process or through awaiting the
24 results of the relief already granted as a result of that process."
25 *Id.* at 936-37 (emphasis original).

26      Prisoners in the State of California have the right to appeal
27 administratively "any departmental decision, action, condition or
28 policy which they can demonstrate as having an adverse effect upon

3

their welfare." Cal. Admin. Code tit. 15, § 3084.1(a). Prisoners are required to file any such grievances "within 15 working days of the event or decision being appealed. " Cal. Admin. Code tit. 15, § 3084.6(c). Working days are defined as excluding the first day, weekends, and holidays. Cal. Code Regs. tit. 15, § 4003(j)(2). However, the appeals coordinator may only deny a grievance as untimely if the "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." *Id.* § 3084.3(c)(6). California regulations thus "explicitly create an exception to the timely filing requirement." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009). Accordingly, where an inmate "was unable to file within the fifteen-day filing period, his failure to file timely does not defeat his claim." *Id.*

There is no question that plaintiff did not file a grievance within fifteen working days of the October 3, 2007, transfer decision. Nor does plaintiff argue that he was unable to file a grievance during that period. Accordingly, plaintiff did not exhaust his administrative remedies with respect to the October 3, 2007, transfer decision, and the question before the court is whether plaintiff exhausted his administrative remedies with respect to the January 11, 2008, attack.

Under California's regulations, plaintiff had until February 4, 2008, in which to file a grievance regarding the January 11, 2008, attack.[1] Between October 3, 2007, and July 7, 2008,

---

[1] The court takes judicial notice of the fact that Martin Luther King Day, which in 2008 fell on Monday, January 21, is a California state holiday. Fifteen working days from January 11, 2008, excluding weekends and Martin Luther King Day, would have been February 4, 2008.

4

plaintiff filed at HDSP one grievance that was accepted for review, log number 08-00752. (Def. Mot. to Dismiss, Clark Decl. ¶3). Plaintiff also filed a grievance on June 22, 2008, which was denied as untimely. (*Id.* ¶5). Finally, plaintiff filed a grievance on July 14, 2008, which was screened out at the informal level. (*Id.* ¶6).

Plaintiff asserts that log number 08-00752, filed on March 14, 2008, relates to his claims in this action. While log number 08-00752 discusses plaintiff's pain and need for medication following the attack and subsequent splenectomy – and therefore tangentially relates to plaintiff's claims – it does not in any way raise an issue regarding the events leading up to the attack, which are the subject of this action. Accordingly, log number 08-00752 did not serve to exhaust plaintiff's administrative remedies.

Plaintiff's grievance filed on June 22, 2008, directly relates to the claims asserted in this action, and if fully pursued through the grievance system, it would have served to exhaust plaintiff's administrative remedies. The June 22, 2008, grievance, however, was filed more than four months late, and was denied as untimely. The question, then, is whether plaintiff had the opportunity to file a grievance in the fifteen-day period such that California's exception to the timely filing requirement applies.

Plaintiff was in the hospital from the date of attack until January 19, 2008, when he was discharged "in good condition," (Compl. 69), and transferred to the infirmary at HDSP, (*id.* at 42). On January 28, 2008, plaintiff was discharged from the infirmary and released to administrative segregation. (*Id.* at 42, 50). It appears from the record that plaintiff remained in administrative

segregation at least through May 8, 2008.  (*See* Compl. 75).

The evidence before the court is that there is an institutional practice to provide grievance forms to any inmate that so requests, both in the infirmary and in administrative segregation. (Def. Supp. Ex. A (D. Reith Decl. ¶¶ 4-5)).  None of the officers working in infirmary while plaintiff was there ever ignored or denied an inmate's request for a grievance.  (*Id.* Exs. B-I).  Moreover, every inmate is provided with a grievance form upon arrival in administrative segregation.  (*Id.* Ex. A (D. Reith Decl. ¶ 4)).

Plaintiff does not allege, nor does he provide any evidence, that he ever requested a grievance form between January 11, 2008 and February 4, 2008, during his stays in the infirmary and administrative segregation.  In fact, his only argument is that it would have been futile to do so.  Specifically, plaintiff argues that if he had asked for a form, it is likely none would have been available because the prison frequently runs out of the inmate grievance forms.[2]  (Pl. Opp'n to Def. Supp. 3).  This is a speculative argument that is insufficient to call into question defendants' assertions that grievance forms were available to all inmates in the infirmary and administrative segregation upon request.  Plaintiff also asserts that he filled out all forms as soon as he was able to do so.  (*See* Pl. Opp'n to Def. Supp. 3) (Plaintiff "requested the necessary forms and filed them as timely

---

[2] Plaintiff alleges that the inmate grievance form does not tell him how to appeal anything other than the loss of property.  In fact, the form states that an inmate "may appeal any policy, action or decision which has a significant adverse affect [sic] upon" him, and therefore sufficiently apprises plaintiff that the form should be used to complain of the conduct or decisions of prison officials.

6

1  as he was able to obtain them and complete them for filing.").
2  Such assertions are vague and do not provide a basis for the court
3  to conclude that plaintiff requested and was denied an inmate
4  grievance form in the fifteen working days following the attack.
5       Accordingly, there is nothing to counter defendants'
6  assertions that had plaintiff asked for a form, one would have been
7  available to him.  Plaintiff's failure to request a grievance form
8  does not absolve him of his responsibility to exhaust his
9  administrative remedies under the PLRA.  Therefore, the evidence in
10 the record supports the conclusion that forms were available to the
11 plaintiff during the fifteen-day period following the attack.
12      Nonetheless, plaintiff asserts that he was physically unable
13 to complete a grievance during this time period.  Plaintiff asserts
14 that he was in extreme pain and discomfort from both his injuries
15 and his surgical recovery.  He states he required immediate medical
16 treatment and that it was not possible to get every form he needed.
17      Plaintiff attended an Institutional Classification Committee
18 ("ICC") hearing on January 24, 2008, and was noted by the committee
19 as being in "good health."  (Def. Supp. Ex. J).  The ICC minutes
20 note that plaintiff understood the committee's actions at the
21 meting and agreed with those actions.  (*Id.*)  Also, plaintiff's
22 condition was good upon his arrival at the infirmary – he was
23 discharged from the hospital in good condition, he was walking
24 without assistance, and his only medical restriction related to
25 heavy lifting.  (Compl. 50-53, 69).  Finally, plaintiff's injuries
26 were not of the type that would affect his reasoning or his ability
27 to write.
28      Moreover, the evidence in the record indicates that plaintiff

7

was indeed able to file something in writing during the crucial fifteen-day period in question. Plaintiff wrote a medical request on February 2, 2008, two days before the fifteen-day period expired. (*See* Def. Supp. Ex. K). The fact plaintiff was able to write and file any request during the fifteen-day period demonstrates to the court that plaintiff was physically able to write and file a timely inmate grievance regarding the January 11, 2008, attack.

Finally, the fact that plaintiff waited until June 22, 2008, to finally file a grievance about the attack belies his assertions that he filed the grievance as soon as he was able to get a form and was physically able to do so. Rather, plaintiff's successful filing of three separate medical request forms in February and March 2008, (*see* Def. Supp. Exs. L-M), combined with plaintiff's significant delay in filing a grievance about this incident, suggest to the court that rather than being prevented from timely filing because of pain and discomfort, plaintiff instead simply elected not to file his grievance until five months after the attack.

Therefore, the court concludes that after his release from the hospital on January 19, 2008, plaintiff had sufficient time and ability to file a grievance within the fifteen-day filing period. In light of this conclusion, the court concludes that the Ninth Circuit's recent decision in *Marella v. Terhune*, 568 F.3d 1024 (9th Cir. 2009) is inapposite. In that case, there was insufficient evidence in the record, and the magistrate judge had made no finding, as to whether the plaintiff had the ability to file his grievance within the fifteen-day period. Here, the court has

determined that plaintiff was able to file in the fifteen-day period, but chose not to do so.

Accordingly, defendants' motion to dismiss (#24, #35, #36) is hereby GRANTED.  Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.  The clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED: This 7th day of January, 2010.

*Howard D. McKibben*
_____
UNITED STATES DISTRICT JUDGE